**Slip Op. 99-26**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____x

Elkem Metals Company,                       :

　　　　　　Plaintiff,                       :　　**Court No. 98-03-00475**
　　　　　　　　　　　　　　　　　　　　　　　　**Before: Barzilay, Judge**

　　　　　　v.                              :

United States of America,                    :

　　　　　　Defendant.                       :

_____x

[Defendant's Motion to Dismiss Granted]

Decided: March 23, 1999.

Baker and Botts, L.L.P (William D. Kramer, Kirk K. Van Tine, Clifford E. Stevens, Jr., Wendy L. Cox, Jacqueline H. Fine) for Elkem Metals Company, plaintiff.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lucius B. Lau); Mark A. Barnett, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

## MEMORANDUM OPINION AND ORDER

**BARZILAY, Judge:** Defendant, the United States, moves to dismiss Plaintiff's, Elkem Metals Company ("Elkem"), motion for judgment upon the agency record challenging the Department of Commerce's ("Commerce") continuation of a suspension agreement with the government of Ukraine, _Antidumping: Silicomanganese from Ukraine; Suspension of Investigation_, 59 Fed. Reg. 60,951 (Nov. 29, 1994). Defendant asserts that this Court does not possess subject matter jurisdiction. For the reasons that follow, this Court grants Defendant's motion to dismiss and denies Elkem's motion for judgment upon the agency record.

*BACKGROUND*

Plaintiff Elkem is a domestic producer of silicomanganese. On November 12, 1993, Elkem filed a petition with Commerce pursuant to 19 U.S.C. § 1673a. *Pl.'s Mot. J. Agency R.* at 1; *Def.'s Mot. Dismiss* at 1-2. Elkem alleged that imports of silicomanganese from Ukraine were being sold at less than fair value and that these imports were materially injuring, or threatening material injury, to a United States industry. *Id.* In response, on December 2, 1993, Commerce initiated an antidumping investigation on silicomanganese from Ukraine. *Initiation of Antidumping Duty Investigations: Silicomanganese From Brazil, the People's Republic of China, Ukraine and Venezuela*, 58 Fed. Reg. 64,553 (Dec. 8, 1993).

On June 17, 1994, Commerce published a preliminary determination which stated that imports of silicomanganese from Ukraine were being sold in the United States at less than fair value and assigned a dumping margin of 163 percent. *Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Silicomanganese from Ukraine*, 59 Fed. Reg. 31,201 (June 17, 1994), as amended by *Correction of Ministerial Errors in Preliminary Antidumping Duty Determination: Silicomanganese from Ukraine*, 59 Fed. Reg. 37,969 (July 26, 1994).

Commerce then entered into a Suspension Agreement ("Agreement") with Ukraine pursuant to 19 U.S.C. § 1673c(l), which permits such agreements with nonmarket economy countries as an alternative to the immediate issuance of an antidumping duty order. In this Agreement, the Government of Ukraine agreed to limit its exports of silicomanganese to the United States and ensure that those exports within the agreed quantitative limits were sold at or above a prescribed

reference price. *Antidumping: Silicomanganese from Ukraine; Suspension of Investigation*, 59 Fed. Reg. 60,951 (Nov. 29, 1994).

On November 1, 1994, pursuant to 19 U.S.C. § 1673c(g), Elkem and Ukraine filed requests for continuation of the antidumping investigation. *Pl.'s Mot. J. Agency R.* at 2; *Def.'s Mot. Dismiss* at 2. On December 6, 1994, Commerce published its final determination, finding that imports of silicomanganese from Ukraine were being sold in the United States at less than fair value and assigning an antidumping margin of 163 percent. *Notice of Final Determination of Sales at Less Than Fair Value: Silicomanganese From Ukraine*, 59 Fed. Reg. 62,711 (Dec. 6, 1994).

On December 21, 1994, the United States International Trade Commission published its final affirmative injury determination. *Silicomanganese From Brazil, the People's Republic of China, Ukraine, and Venezuela*, 59 Fed. Reg. 65,788 (Dec. 21, 1994). No antidumping duty order was issued due to the continued existence of the Agreement and pursuant to 19 U.S.C. § 1673c(f)(3)(B). *Def.'s Mot. Dismiss* at 3.

In November of 1995, 1996, and 1997, Commerce published its "Notice of Opportunity to Request Administrative Review of Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation" in which it gave interested parties an opportunity to request an administrative review of the Agreement. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 60 Fed. Reg. 55,540 (Nov. 1, 1995); 61 Fed. Reg. 56,663 (Nov. 4, 1996); 62 Fed. Reg. 60,219 (Nov. 7, 1997). No requests for review were made at any time by any party.

Elkem filed this action on March 4, 1998, invoking this Court's jurisdiction under 28 U.S.C. § 1581(i). Subsequently, on June 4, 1998, Commerce began a formal anticircumvention review

pursuant to the terms of the Agreement. *Pl.'s Opp. Def.'s Mot. Dismiss* at 11-12. Commerce stated that the "review will be conducted to determine whether the commitments made under the reporting and anticircumvention provisions have been met." *Id.* at 12 (quoting Memorandum of Consultations Regarding Administration of the Silicomanganese Suspension Agreement, dated May 28, 1998). In addition, on November 12, 1998, Commerce published the fourth "Notice of Opportunity to Request Administrative Review of Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation." *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 63 Fed. Reg. 63,287 (Nov. 12, 1998). As a result, Elkem requested an administrative review pursuant to 19 U.S.C. § 1675. Prior to this request, neither Elkem nor any other interested party had requested an administrative review or a changed circumstances review pursuant to 19 U.S.C. § 1675.

***ARGUMENTS***

This action comes before the Court on Elkem's motion for judgment upon the agency record, pursuant to USCIT R. 56.1, and on Defendant's motion to dismiss, pursuant to USCIT R. 12(b)(1).

*A.      Plaintiff's Argument*

Elkem argues that Commerce is compelled to cancel the Agreement and issue an antidumping duty order because Commerce has evidence that Ukraine has violated the Agreement. *Pl.'s Mot. J. Agency R.* at 6. Elkem asserts that Ukraine has violated the Agreement because the Ukrainian government failed to establish measures to ensure restriction of direct and indirect exports. *Id.* at 6-13. In addition, Elkem also asserts that as a result of Ukraine's violations, Commerce cannot effectively and adequately monitor compliance with the Agreement and cannot prevent the suppression or undercutting of price levels of domestic products. *Id.* at 14-15.

Elkem states that the Court has jurisdiction under subsection 1581(i) because the case is not reviewable under any other subsection of the statute. *Pl.'s Opp. Def.'s Mot. Dismiss* at 17. Elkem argues that no exhaustion of administrative remedies is required by the statute; furthermore, judicially mandated exhaustion is discretionary under 28 U.S.C. § 2637(d). *Id.* at 20. Elkem also argues that exhaustion would serve no purpose because there is nothing to be gained from permitting the compilation of a record or from agency expertise. *Id.* at 20-22. Elkem states that it has complained to Commerce many times, but to no avail. *Id.* at 25. An administrative review would not redress Elkem's injury because such a review would cover only a specific time period and would not reach violations that occurred outside that time. *Id.* at 26-27. Moreover, Elkem asserts, the reviews would take years and, since Commerce has been unwilling to consider Elkem's claims, as shown by their inaction for the past three years, Elkem could be put out of business. *Id.* at 28.

Elkem posits that Commerce is required by 19 U.S.C. § 1673c(i) to cancel a suspension agreement if the agreement has been violated. *Pl.'s Mot. J. Agency R.* at 22. Elkem asserts that since the statute states that "if the administering authority determines that an agreement . . . is being, or has been, violated, or no longer meets the requirements of [subsection 1673c(b) or (c)], it shall . . . issue an antidumping duty order," 19 U.S.C. § 1673c(i)(1)(C), then the use of the word *shall* is directive and offers Commerce no discretion whether to terminate the Agreement. *Id.* at 23. Elkem also suggests that legislative history  supports the notion that Congress intended suspension provisions to be used rarely and only if compliance could be carefully monitored. *Id.* at 24.

Elkem furthers its argument by proffering Commerce's regulations under 19 C.F.R. § 351.209. *Id.* at 27. That regulation provides that if there is a finding of violation, which Elkem

asserts in this case, then there must be immediate action. *Id.* at 27-28. Elkem further asserts that Commerce has no discretion to offer an opportunity to cure to the party in violation. *Id.* at 27.

Elkem argues that it has petitioned Commerce for two and a half years to take action, and that such a delay by Commerce is unreasonable. *Pl.'s Opp. Mot. Dismiss* at 25. Elkem also asserts that Commerce never advised it that Elkem was pursuing the wrong course by informally contacting Commerce instead of requesting an administrative or changed circumstances review. *Id.* In its motion for judgment upon the agency record, Elkem requests that the Court compel Commerce to: 1) cancel the Agreement using immediate determination procedure; 2) suspend liquidation 3) issue an antidumping duty order; and 4) issue instructions to Customs for cash deposits.

### B.      Defendant's Argument

Commerce opposes Elkem's motion for judgment upon the agency record and argues that it has not acted in an arbitrary or capricious manner. *Def.'s Opp. Mot. J. Agency R.* at 21. Defendant has moved to dismiss arguing that this Court does not possess subject matter jurisdiction. *Def.'s Mot. Dismiss* at 6. Moreover, Commerce argues that this case does not meet the exacting standards necessary for the Court to mandamus an agency. *Def.'s Mot. J. Agency R.* at 16. Commerce posits that mandamus relief is an extraordinary measure and that the extraordinary circumstances under which it is granted do not exist in the case at bar. *Id.*

Commerce argues that the Court does not have jurisdiction under 28 U.S.C. § 1581(i) because judicial review would be available under a different subsection of the statute, and that such review would not be manifestly inadequate. *Def.'s Mot. Dismiss* at 6-7. Commerce states that since the Agreement's inception, during the month of each anniversary, Commerce has published a Notice to Request Administrative Review. *Id.* at 8-9. Commerce points out that neither Elkem nor any

other party has ever filed such a request. *Id.* Similarly, no one took the opportunity to file for a changed circumstances review. *Id.*

Thus, Commerce posits that had Elkem pursued the appropriate administrative remedies, it could have sought an administrative or changed circumstances review. *Id.* at 8. Subsequently, Elkem could have sought judicial review of that determination under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c). *Id.* Commerce argues that its final determination in an administrative or changed circumstances review would provide the agency with an opportunity to make a record determination as to whether there is a basis to terminate the Agreement. *Id.*

Commerce argues that Congress, under 19 U.S.C. § 1673c(b), (c) and (l), has given the agency the power to terminate or suspend antidumping investigations by entering into suspension agreements with exporters to eliminate sales at less than fair value, or with exporters to eliminate injurious effect, or with a nonmarket economy to restrict value of imports. *Def.'s Opp. Mot. J. Agency R.* at 16-17. Commerce also asserts that Congress has left the task of monitoring compliance to Commerce's discretion. *Id.* at 20. In this case, Commerce has entered into a suspension agreement with a nonmarket economy under 19 U.S.C. § 1673c(l). *Id.* at 20. Furthermore, Commerce asserts that it is monitoring the Agreement. *Id.* at 26.

Consequently, Commerce argues that Elkem does not have a right to demand termination of the Agreement because the only signatories were Commerce and Ukraine. *Id.* at 20. Commerce asserts the terms of the Agreement define what constitutes a violation, and that, thus far, Commerce has found no violations. *Id.* at 27. The Agreement also provides that, at the discretion of the Secretary, an act or omission which is inadvertent or inconsequential does not constitute a violation of the Agreement. *Id.* at 24-25.

Commerce states that there has been only one confirmed delivery of silicomanganese from Ukraine. *Id.* at 21. Commerce has not yet concluded that reporting inconsistencies rise to the level of a violation of the Agreement. *Id.* at 21-22. Commerce asserts that it has expressed strong concerns and has been in touch with the Ukrainian government regarding late filing and misfiling. *Id.* at 22. Moreover, Commerce has not identified specific evidence of suppression or undercutting of domestic prices. *Id.* Absent such evidence, Commerce's continuation of the Agreement is within its discretion and is not arbitrary or capricious. *Id.*

Commerce argues that other remedies are available to Elkem instead of mandamus. *Id.* at 27-28. Commerce asserts that Elkem may request a review of the Agreement under 19 U.S.C. § 1675(a)(1)(C), an administrative review pursuant to 19 U.S.C. § 1675(a)(1)(B), and under 19 U.S.C. § 1675(b)(1)(B), a change in circumstances review, and that judicial review of such determinations would be available to Elkem under 28 U.S.C. § 1581(c). *Id.*

## DISCUSSION

Before the Court may consider Elkem's argument that Commerce is compelled to act as Elkem requests in its Complaint, the Court must establish whether appropriate subject matter jurisdiction exists. "It is elementary that 'the United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). In addition, the plaintiff has the burden of proving the requisite jurisdictional facts to establish the court's jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 188-89 (1936); *see also Juice Farms, Inc. v. United States*,

68 F.3d 1344, 1345 (Fed. Cir. 1995); *Hilsea Investment Ltd. v. Brown*, 18 CIT 1068 (1994); *Smith Corona Group, SCM Corp. v. United States*, 593 F. Supp. 415, 417 (CIT 1984).

The Court is unpersuaded by Elkem's argument that jurisdiction exists under 28 U.S.C. § 1581(i), also known as "residual jurisdiction." It is well established that the scope of residual jurisdiction of this Court is very narrow and that it "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the relief provided under that other subsection would be manifestly inadequate." *See Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987), *cert. denied* 484 U.S. 1041 (1988); *accord Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992); *accord National Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1556-59 (Fed. Cir. 1988); *see also Industria de Fundicao Tupy v. Brown*, 866 F. Supp. 565, 571 (CIT 1994).

Pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iv), a determination by Commerce, "under section 1671c or 1673c of this title, to suspend an antidumping duty . . . investigation," is reviewable by this Court. An interested party may request Commerce to "review the current status of, and compliance with, any agreement by which an investigation was suspended." 19 U.S.C. § 1675(a)(1)(C).

Elkem, as a domestic producer of silicomanganese, qualifies as such an interested party, and jurisdiction vests in this Court to review the challenged determination pursuant to 28 U.S.C. § 1581(c), as provided for in 19 U.S.C. § 1516a. Subsection 1581(c) provides that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930." Since § 1581(c) provides explicitly for the type of review sought by Elkem, its claim for jurisdiction under § 1581(i) cannot be sustained.

The Court is persuaded by this Court's reasoning in *Ad Hoc Committee of Fl. Producers of Gray Portland Cement v. United States*, 1998 Ct. Intl. Trade LEXIS 137 ("*Ad Hoc II*"), where this Court was required to review two quarterly fair market value calculations made pursuant to a suspension agreement entered into to suspend an antidumping investigation of gray portland cement and cement clinker from Venezuela. *Id.* at _____. In 1991, Commerce initiated an antidumping investigation in response to plaintiff's petition. After publishing its affirmative preliminary determination, Commerce entered into the suspension agreement, whereby it agreed to calculate fair market value based upon the constructed value of the merchandise, as provided by the importers. *Id.* at _____. Throughout the administrative process, plaintiff objected to numerous aspects of the fair market value and constructed value calculations. In 1993, plaintiff commenced an action under § 1581(i) to "contest Commerce's action during the course of the suspension agreement proceedings." *Id.* at ____. Subsequently, Commerce filed a motion to dismiss for lack of subject matter jurisdiction. This Court denied that motion in *Ad Hoc Committee of Fl. Producers of Gray Portland Cement v. United States*, 866 F. Supp. 576 (1994) ("*Ad Hoc I*"), holding that the court could consider the case under its residual jurisdiction authority. *Id.* at 581. The case was then reassigned.

In *Ad Hoc II*, this Court reasoned that plaintiff could have invoked this Court's jurisdiction under another subsection of § 1581 and that the remedy would not have been inadequate. The Court explained that:

> Congress expressly mandated a procedure for the review of suspension agreement proceedings. The antidumping statute requires Commerce to initiate an administrative review of a suspension agreement upon the request of an interested party. *See* 19 U.S.C. § 1675(a). Specifically, 19 U.S.C. § 1675(a)(1)(C) provides that Commerce shall 'review the current status of, and compliance with, any agreement by reason of which an investigation was suspended, and review the

amount of any subsidy or margin of sales at less than fair value involved in the agreement.' In turn, a party may seek judicial review of such determination pursuant to 28 U.S.C. § 1581(c), as provided in 19 U.S.C. § 1516a(a)(2)(B)(iii) (permitting judicial review of determinations made under 19 U.S.C. § 1675). Accordingly, it could not be more plain that Congress mandated a scheme for the review of suspension agreements. And, in this scheme, this court's jurisdiction to review suspension agreements flows from subsection 1581(c). And importantly, when it defined the scope of this court's jurisdiction as part of the Customs Court Act of 1980, the House Judiciary Committee explicitly stated that 'it is the intent of the Committee that the Court of International Trade not permit [28 U.S.C. § 1581(i)] . . . to be utilized to circumvent the exclusive method of judicial review of those antidumping . . . determinations listed in [19 U.S.C. § 1516a],' which includes administrative review determinations of suspension agreements. H.R. Rep. No. 1235, 96th Cong., 2d Sess. 48 (1979), reprinted in 1980 U.S.C.C.A.N. 3729, 3759-60. Thus, because in this Court's view subsection 1581(c) serves as the jurisdictional basis for review of suspension agreement proceedings, the invocation of subsection 1581(i) jurisdiction is only appropriate if the relief available under subsection 1581(c) is manifestly inadequate.

*Ad Hoc II* at _____.

Although the court *Ad Hoc II* went on to review the case under residual jurisdiction, it did so for very specific reasons. First, the Court was following a previous decision in the same case. That is not the case here, as this is the first time this case is being reviewed by a court.

Moreover, in *Ad Hoc II*, this Court was mindful of the lengthy interval, of approximately seven years, between the start of that case and the decision. Although six years have transpired between today's decision and the start of this case, the Court notes that Elkem itself was responsible for the timing of judicial review. Elkem was afforded three opportunities to request an administrative review, and took that opportunity only upon publication of the fourth notice to request an administrative review. Thus, had Elkem wanted to significantly shorten the time between the start of its case and today, it certainly had the opportunity. Also, although the Court is sympathetic to Elkem's business concerns, such concerns do not persuade the Court to ignore clearly applicable standards set by Congress. *See Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987),

*cert. denied* 484 U.S. 1041 (1988) ("mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate."). Thus, it is clear to the Court that Congress provided a specific, and clearly adequate, method to challenge determinations. Such a method should not be circumvented through the use of residual jurisdiction.

For the reasons discussed above, the Court finds that Elkem has not satisfied its burden of demonstrating that subject matter jurisdiction exists. Thus, the Court holds that Elkem could have invoked this Court's jurisdiction under another subsection of 28 U.S.C. § 1581, and that the relief provided therein would not have been manifestly inadequate.

Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss is Granted and that Plaintiff's Motion for Judgment Upon Agency Record is Denied.

_____
Judith M. Barzilay, Judge

Dated: March 23, 1999
New York, New York